IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EQUAL EMPLOYMENT OPPORTUNITY      )
COMMISSION,                       )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     1:13CV46
                                  )
WOMBLE CARLYLE SANDRIDGE &        )
RICE, LLP,                        )
                                  )
          Defendant.              )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned Magistrate Judge on Defendant's Motion for Spoliation Sanctions (Docket Entry 17). (See Docket Entry dated Dec. 5, 2013.) For the reasons that follow, the instant Motion should be granted in part, denied in part, and deferred in part.

## I. Background

This case arises from a Complaint filed by the Equal Employment Opportunity Commission (the "EEOC") on behalf of Charlesetta Jennings alleging that Womble Carlyle Sandridge & Rice, LLP ("Womble Carlyle"), her former employer, "failed to provide Jennings with a reasonable accommodation for her disability, and subsequently discharged her from her position as a Support Services Assistant [] because of her disability, in violation of the [Americans with Disabilities Act of 1990 (the 'ADA')]." (Docket Entry 1 at 1.) Among other things, the Complaint demands an award

of back pay.  (Id. at 6.)  As part of its defense, Womble Carlyle asserts that Jennings "failed to mitigate her damages by making reasonable efforts to secure alternate employment."  (Docket Entry 18 at 2; see also Docket Entry 4 at 8.)

Jennings filed a Charge of Discrimination with the EEOC in March of 2011 and again in August of 2011.  (Docket Entry 21-1, ¶ 2.)  In November of 2011, she "applied for and received unemployment benefits from the North Carolina Division of Employment Security ('NCDES')."  (Id., ¶ 4.)  She received said benefits from November of 2011 through February of 2013.  (Id., ¶ 5.)

The EEOC instituted this action on Jennings' behalf in January of 2013.  (See Docket Entry 1 at 7.)  In March of 2013, Womble Carlyle served the EEOC with its first set of interrogatories and requests for production of documents.  (See Docket Entries 19-1, 19-2.)  Interrogatory No. 7 and Request for Production No. 21, respectively, requested as follows:

> 7. Identify all efforts Jennings has made to obtain alternate employment since August 9, 2011, including all full-time and part-time jobs as well as self-employment, temporary employment or independent contractual work. Provide the complete name and address of each prospective employer, state whether an offer of employment was made to Jennings, whether Jennings accepted such offer and describe any salary or wages offered.
>
> . . .

> 21. Produce all documents evidencing Jennings' efforts to obtain employment since August 9, 2011.

(Docket Entry 19-1 at 10; Docket Entry 19-2 at 14.) In early April of 2013, while attempting to obtain information from Jennings responsive to Womble Carlyle's interrogatories and requests for documents, the EEOC learned that, "although she had been keeping a log ('Work Search Record') of all places where she sought work, she discarded the log in February [of] 2013." (Docket Entry 21-2, ¶ 4.) On May 30, 2013, the EEOC replied to Interrogatory No. 7 and Request for Production No. 21, respectively, as follows:

> [7] **ANSWER:**[] Jennings has identified several employers with whom she has attempted to secure employment since her August 9, 2011 termination by [Womble Carlyle]. Those employers include, but are not limited to: Truliant Credit Union, Wells Fargo (formerly Wachovia), Bank of America, New Bridge Bank, Southern Community Bank, Lowe's Foods, Walgreen's, Steinmart, Piedmont Federal, Rite Aid, Roses' Department Store, and Suntrust. She did not receive any offers from any of these employers, and has received no such offers of employment since her termination by [Womble Carlyle]. [] Jennings will testify about the specifics of her pursued employment with these companies, as well as additional places she sought work, at her deposition.
>
> . . .
>
> [21] **RESPONSE:** [] Jennings has sought employment from several employers since her discharge by [Womble Carlyle] on August 9, 2011. Please see EEOC's Answer to Defendant's Interrogatory No. 7. To date, [] Jennings has received no offers of employment. Further, although [] Jennings had to certify weekly to [NCDES] that she was actively seeking work in

> order to remain eligible for unemployment
> benefits, she has not retained copies of any
> applications she submitted. [] Jennings will
> testify about her efforts to secure employment
> at her deposition.

(Docket Entry 19-3 at 4; Docket Entry 19-4 at 8.)

In June of 2013, Womble Carlyle sent a letter to the EEOC "regarding its failure to respond adequately to [Womble Carlyle's] discovery requests, including those related to [] Jennings' mitigation of damages." (Docket Entry 18 at 4; see also Docket Entry 19-5 at 3-4.) In its response, the EEOC again indicated that Jennings "did not retain any employment applications, notes, job postings, or any documents related to her job search." (Docket Entry 19-6 at 4.) It further noted that Jennings "did not retain any job logs she created, and did not submit any of those job logs to [NCDES]." (Id.) Womble Carlyle and the EEOC exchanged a second round of letters concerning, in part, information and documents related to Jennings' mitigation efforts, in which the EEOC provided some additional information about Jennings' job search - including identifying two potential employers to whom Jennings submitted written applications - but did not produce any additional documents. (Docket Entry 19-7 at 2-3; Docket Entry 19-8 at 1-3.)

During her deposition in September of 2013, Jennings testified that, while receiving unemployment benefits, she maintained a log of her attempts to seek employment. (Docket Entry 19-15 at 6-7.) She indicated that, when her unemployment benefits terminated in

February of 2013, she shredded the log. (Id. at 7.) She averred that she "did know that [she] was going to need them for this [lawsuit]." (Id.) Further, she indicated that she discarded additional materials in June of 2013. (Id. at 17-18.) According to her deposition testimony, those materials included newspapers containing advertisements for job openings for which Jennings applied. (Id.) However, in her affidavit filed in connection with the EEOC's Response to the instant Motion, Jennings avers that the materials she disposed of in June of 2013 consisted only of newspapers containing classified employment advertisements to which she did not apply. (Docket Entry 21-1, ¶ 13.)

Womble Carlyle filed the instant Motion requesting sanctions for spoliation of evidence. (Docket Entry 18.) The EEOC responded (Docket Entry 21) and Womble Carlyle replied (Docket Entry 22).

## II. Discussion

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). Moreover, "a

5

court must find some degree of fault to impose sanctions." Id. "[W]hen imposing spoliation sanctions, 'the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.' But dismissal should be avoided if a lesser sanction will perform the necessary function." Id. (quoting Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995)).[1]

Indeed, because "dismissal is severe and constitutes the ultimate sanction for spoliation . . . [i]t is usually justified only in circumstances of bad faith or other 'like action.'" Id. at 593 (quoting Cole v. Keller Indus., Inc., 132 F.3d 1044, 1047 (4th Cir. 1998)). However, "even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." Id. In sum:

---

[1] Although the Fourth Circuit in Silvestri addressed dismissal of the entire case, courts in this Circuit have applied the dismissal analysis to requests for dismissal of a demand for back pay. See, e.g., Teague v. Target Corp. D/b/a/ Target Stores, Inc., No. 3:06CV191, 2007 WL 1041191, at *2 (W.D.N.C. Apr. 4, 2007) (unpublished). Womble Carlyle seeks to distinguish its request for dismissal of the demand for back pay from dismissal of the entire case (see Docket Entry 18 at 13); however, denying the remedy of back pay to a plaintiff who alleges wrongful termination represents a sanction akin to dismissing the case in its entirety. Moreover, Womble Carlyle also seeks trial-related sanctions as an alternative to dismissal. (See id. at 13-16.) Under these circumstances, the undersigned Magistrate Judge will enter a recommendation, rather than an order, as to the instant Motion.

> [T]o justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was <u>so egregious</u> as to amount to a forfeiture of his claim, <u>or</u> (2) that the effect of the spoliator's conduct was <u>so prejudicial</u> that it substantially denied the defendant the ability to defend the claim.

<u>Id.</u> (emphasis added).

In evaluating the "spoliator's conduct" to determine the level of "egregious[ness]," <u>id.</u>, courts focus on the culpability of the spoliator's state of mind. <u>See, e.g.</u>, <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497, 529-31 (D. Md. 2010). In this case, Jennings has admitted shredding materials documenting her job search efforts after the EEOC filed this suit on her behalf, and well after she filed her complaint with the EEOC. (<u>See</u> Docket Entry 19-15 at 7-8, 17-18; Docket Entry 21-1, ¶¶ 11, 13.) Womble Carlyle argues that Jennings and the EEOC exhibited a high level of culpability and the Court thus should dismiss the demand for lost wages and benefits or, in the alternative, issue an adverse inference instruction to the jury. (Docket Entry 18 at 11-16.) It also requests "such additional sanctions as [the Court] may deem appropriate, including but not limited to requiring the EEOC to pay [Womble Carlyle's] costs and expenses, including its reasonable attorneys' fees, incurred in attempting to conduct discovery regarding [] Jennings' mitigation of damages and in bringing the instant Motion." (<u>Id.</u> at 17.) The EEOC, on the other hand,

7

objects to the imposition of sanctions of any kind on the grounds that Jennings did not knowingly do anything wrong and that the EEOC attempted to preserve the relevant documents. (Docket Entry 21 at 6-18.)

In that regard, an attorney for the EEOC has averred that, in December of 2012, he instructed Jennings to retain documents relating to her job search. (Docket Entry 21-2, ¶ 3.) However, Jennings has sworn that she "do[es] not recall whether the EEOC told [her] to keep documents related to this case." (Docket Entry 21-1, ¶ 15.) Further, she previously testified that she "wasn't aware that [she] had to keep those papers for this [litigation]." (Docket Entry 19-15 at 8.) According to Jennings, she "did not destroy these records or any records in an attempt to hide them from Womble Carlyle. [She] destroyed them because [she] did not understand that [she] needed to keep the Work Search Record or the classified ads that were in [her] filing cabinet because of their relevance to this lawsuit. [She] did not realize [she] needed to keep information about employers who never contacted [her] for employment." (Docket Entry 21-1, ¶ 11.) Moreover, she has asserted that she "still do[es] not understand how documents about jobs that were not offered to [her] are relevant in this lawsuit." (Id., ¶ 12.)

The foregoing facts establish that the EEOC and/or Jennings bear "some degree of fault," Silvestri, 271 F.3d at 590, for the

8

destruction of relevant evidence.  The EEOC argues that it took "reasonable steps to ensure [] Jennings retained documents relating to her job search efforts by counseling [] Jennings prior to the filing of this lawsuit that she should preserve all records related to her employment search."  (Docket Entry 21 at 15 (citing Docket Entry 21-2, ¶ 3).)  However, the EEOC has not explained the full context or exact content of its instructions to Jennings, has provided no contemporaneous documents regarding any such instructions, and has acknowledged that Jennings "does not recall being advised to retain the records" and that she still professes ignorance about her obligation to preserve these materials.  (Id. at 15-16 (citing Docket Entry 21-1, ¶¶ 12, 15); see also Docket Entry 21-2, ¶ 3.)  Moreover, as Womble Carlyle has noted (see Docket Entry 18 at 15-16), the timing of the destruction of documents - i.e., after the initiation of the law suit and, at least as to some materials, after the parties commenced discovery - supports a finding of culpability.

"In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault - be it bad faith, willfulness, gross negligence, or ordinary negligence - is a sufficiently culpable mindset." Victor Stanley, 269 F.R.D. at 529.  The EEOC's and Jennings' actions here certainly constitute negligence, if not gross negligence.  See id. (defining negligence, or "culpable carelessness," as "the failure to exercise the standard of care

9

that a reasonably prudent person would have exercised in a similar situation" and gross negligence as "something more than carelessness, [that] differs from ordinary negligence only in degree, and not in kind" (internal quotation marks omitted)).  As Womble Carlyle has argued (see Docket Entry 22 at 5 (citing Shawback v. Wells Fargo Bank, N.A., No. 3:11-cv-00243 JWS, 2013 WL 3306078, at *2 (D. Alaska July 1, 2013) (unpublished)), no basis exists to find that Jennings, an educated woman, who worked for law firms for over a decade, pursued complaints related to the instant action with the EEOC since 2011, and apparently received some instruction regarding document retention, reasonably could have failed to preserve materials related to her job search efforts.

Additionally, the EEOC became aware of this destruction in April of 2013 (see Docket Entry 21-2, ¶ 4), yet told Womble Carlyle only that Jennings "has not retained copies of any applications she submitted" (Docket Entry 19-4 at 8).  Womble Carlyle only learned of the destruction of documents at Jennings' deposition, five months later.  Such conduct further supports a finding of culpability.

The Court next looks to whether the actions of the EEOC and/or Jennings "substantially denied [Womble Carlyle] the ability to defend the claim."  Silvestri, 271 F.3d at 593.  The EEOC notes that, although the job search documentation no longer exists, it provided information about Jennings' mitigation efforts during

10

discovery and Jennings herself testified about her efforts during her deposition. (Docket Entry 21 at 11.) It therefore argues that Womble Carlyle retains means to present its mitigation defense. (Id.) Womble Carlyle, in turn, points to the fact that "Jennings did away with all documentation of her purported job search, and the information contained in the missing records is not recorded elsewhere." (Docket Entry 22 at 3.) It further argues that Jennings has offered inconsistent testimony regarding the spoliation. (Id.) As a result, Womble Carlyle contends that "no reliable evidence exists documenting [] Jennings' alleged efforts to mitigate her damages." (Docket Entry 18 at 17.)

Although the actions of Jennings and the EEOC indeed may have caused Womble Carlyle "substantial prejudice" (see Docket Entry 22 at 10), they did not "substantially den[y] [Womble Carlyle] the ability to defend the claim," Silvestri, 271 F.3d at 593. Jennings can testify about her efforts to obtain employment and Womble Carlyle possesses the means to challenge her factual assertions and her credibility. For example, Womble Carlyle indicated that it served subpoenas on two potential employers to which Jennings claimed she submitted employment applications, and both companies reported that they had no record of receiving such applications. (Docket Entry 18 at 6 (citing Docket Entries 19-9, 19-10, 19-11, 19-12).) Womble Carlyle could follow up with other prospective employers to determine whether Jennings made contact with them as

11

well - the EEOC and Jennings provided a list of all the companies to whom Jennings remembers reaching out (see Docket Entry 19-8 at 1-2). Moreover, the fact of the evidence destruction itself, as well as the fact that Jennings gave conflicting testimony about it (compare Docket Entry 19-15 at 17-18, with Docket Entry 21-1, ¶ 13), appear to support Womble Carlyle's affirmative defense of failure to mitigate damages and to provide an alternative means for it to defend against Jennings' request for back pay.

In sum, the circumstances do not warrant striking the demand for back pay, but do evince a "sufficiently culpable mindset" to warrant some lesser sanction(s), Victor Stanley, 269 F.R.D. at 529. The Court therefore should award Womble Carlyle its costs and expenses, including reasonable attorneys' fees, incurred in attempting to conduct additional discovery regarding Jennings' mitigation of damages and in bringing the instant Motion. As to Womblye Carlyle's request for an adverse inference instruction to the jury, any determination as to the necessity or propriety of such instruction should be deferred to the trial judge for consideration at the appropriate time.[2]

---

[2] The Parties apparently disagree about whether the question of back pay goes to the jury or falls to the Court. (See Docket Entry 21 at 12; Docket Entry 22 at 9-10.) The existence of this dispute, which the trial judge normally would resolve, strongly counsels in favor of deferring the related question of whether to issue an adverse inference instruction to the trial judge as well.

### III. Conclusion

The record establishes a level of culpability and prejudice insufficient to support striking the demand for back pay, but nonetheless warranting lesser sanctions.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion for Spoliation Sanctions (Docket Entry 17) be granted in part in that the Court should order the EEOC and/or Jennings to pay Womble Carlyle's reasonable expenses, including attorney fees, incurred in its attempts to conduct additional discovery regarding mitigation of damages and in bringing the instant Motion, be denied in part in that the Court should not strike the EEOC's demand for back pay for Jennings, and be deferred in part in that the trial judge should determine whether the circumstances at trial warrant issuing an adverse inference instruction.

**IT IS ORDERED** that, on or before January 27, 2014, Womble Carlyle shall serve the EEOC with a statement of reasonable expenses, including attorney fees, incurred in its attempts to conduct additional discovery regarding mitigation of damages and in bringing the instant Motion.

**IT IS FURTHER ORDERED** that, if Womble Carlyle timely serves the EEOC with a statement of its reasonable expenses, on or before February 17, 2014, the EEOC shall file <u>either</u>: 1) a Notice indicating its agreement that the claimed expenses are reasonable; <u>or</u> 2) a memorandum of no more than five pages contesting the

reasonableness of the claimed expenses, as well as a certification that it has conferred in good faith with Womble Carlyle about this issue.

**IT IS FURTHER ORDERED** that, on or before March 3, 2014, Womble Carlyle shall file a response of no more than five pages to any memorandum timely filed by the EEOC contesting the reasonableness of the claimed expenses.

**IT IS FURTHER ORDERED** that, on or before March 10, 2014, the EEOC may file a reply of no more than three pages to any response filed by Womble Carlyle regarding the reasonableness of the claimed expenses.

                                                  /s/ L. Patrick Auld
                                                      **L. Patrick Auld**
                                    **United States Magistrate Judge**

January 6, 2014